DECISION
On December 7, 2011, this Court entertained the Petition of Charles S. Kinney, Chief Executive Officer and Trustee (hereinafter referred to as "Petitioner") for the Appointment of a Special Master for Westerly Hospital Health Care, Inc., The Westerly Hospital, Atlantic Medical Group, Inc., Ocean Myst MSO, LLC., Women's Health of Westerly, LLC., and North Stonington Health Center, Inc. (hereafter referred to as the "Westerly Hospital and Related Entities").
Petitioner filed this Petition seeking an Order from this Court appointing a Special Master. Westerly Hospital and Related Entities employs more than 750 employees and has operated at a loss of more than $5,700,000 in its most recent fiscal year. (Petition at ¶¶ 3, 5). In addition, Westerly Hospital and Related Entities is currently unable to pay their debts as they come due. The Petitioner submits that in order to continue to provide, low cost, high quality health care services a Special Master should be appointed. *Page 2 
Westerly Hospital and Related Entities are engaged in, and intends to continue to engage in, efforts to locate a strategic partner with a more secure institution to stabilize its business operations. (Petition at ¶ 6). However, Petitioner contends that a Special Master is needed and should be authorized by this Court to: (1) manage the day-to-day operations, and (2) take charge of the assets, current operations, and property of the Westerly Hospital and Related Entities.Id.
A hearing was held on December 7, 2011 to discuss the merits of the Petition. At the hearing, the Court accepted the Petition and found that the Westerly Hospital and Related Entities had satisfied the criteria for the appointment of a Special Master. The Court reserved its decision appointing a Special Master at the hearing. This was to allow interested stakeholders an opportunity to submit recommendations and factors they suggest the Court should consider before making its determination of who the Special Master should be and what responsibilities the Special Master should have.
The Court has considered the Petition, the applicable law, the comments made at the hearing, as well as the filings from interested parties, along with publicly available information regarding the Westerly Hospital and Related Entities. As a result of this process, this Court finds and Orders the following:
 I. This Court finds that Westerly Hospital and Related Entities Special Mastership is a Complex Matter
As an initial matter, this Court must first determine whether appointing a Special Master is appropriate in these circumstances. Such a determination rests on whether the Petition is a *Page 3 
complex matter. This Court determines that this Petition is a complex matter. Consequently, a Special Master is needed.
The Westerly Hospital and Related Entities is composed of a number of not-for-profit and for-profit entities, including a 125-bed hospital that provides medical, surgical, laboratory and rehabilitative services. The hospital has more than 750 employees, approximately two-thirds of which are covered by a collective bargaining agreement. Approximately 135 primary and specialty physicians are affiliated with the Westerly Hospital and Related Entities. The Westerly Hospital and Related Entities operate under the authority of licenses issued by the State of Rhode Island and are subject to the continuing regulatory authority of numerous state and federal agencies and departments.
The Petitioner requests that the Westerly Hospital and Related Entities continue to operate and provide uninterrupted healthcare services. As Westerly Hospital and Related Entities will continue to operate and provide medical services there will no doubt be issues that need to be addressed related to bondholders, secured financial institutions, collective bargaining agreements, insurance provider relationships and patient care. In addition, this case involves an interrelation of the State's regulation of health care and court process. As such, this Court finds that this Petition involves a complex Special Mastership requiring special oversight by this Court with special conditions.
 II. Appointment of a Special Master
After due consideration, this Court must take the first critical step in moving this Special Mastership forward, which is the appointment of a Special Master. The Special Master must *Page 4 
possess the attributes of a "star quarterback" who along with his team will move the Westerly Hospital and Related Entities across the "goal line" to a successful resolution. The Special Master must be able to accomplish this task without necessarily knowing where the "goal line" is at this early stage.
In order to be successful, the Special Master must possess the ability to quickly get "his hands around" the operations and finances of the Westerly Hospital and Related Entities. It is critical that the Special Master have an open mind, listen, and consider all points of view. The Special Master must have the ability to interact, on a frequent basis, with a diverse group of constituencies including, medical providers, insurers, creditors, regulators, patients and other stakeholders. The Special Master should be experienced in complex corporate matters, and some experience with issues surrounding health-care. The Special Master must have the experience to put the proper team of professionals together. The Special Master must also be able to make some difficult recommendations and formulate and execute a timely plan to allow the Westerly Hospital and Related Entities to emerge from the Special Mastership.
Based upon consideration of the statutes and rules governing the appointment of a Special Master, the attributes required for this assignment, and the filings and recommendations of the parties, this Court appoints Mark Russo, Esquire as the Temporary Special Master for Westerly Hospital and the Related Entities. Finally, as part of the Order submitted, a hearing shall be held to determine whether the Temporary Special Master shall be the Permanent Special Master in this case. *Page 5 
 III. Conflict of Interest Issues
The Special Master will be the fiduciary for the Westerly Hospital and Related Entities and will serve a critical role determining the future of these entities. Therefore, this Court finds that the Special Master must be disinterested and free of material conflicts of interest. As such, although the Special Master has represented to the Court that there is no such conflict, this Court requires that the Special Master file an Affidavit with the Court on or before December 13, 2011 that provides:
 (1) That the Special Master has conducted a conflict review of his own matters and the matters of the law firm of Ferrucci Russo, P.C. to determine whether there is any client or other relationship with Westerly Hospital and Related Entities, its secured or unsecured creditors and other related parties known at this time and disclose any material results found from that search.
 (2) Whether the Special Master or the law firm of Ferrucci Russo, P.C. have ever been a creditor of Westerly Hospital and Related Entities.
 (3) Whether the Special Master or the law firm of Ferrucci Russo, P.C. have ever been a director, officer or employee of Westerly Hospital and Related Entities.
 (4) Whether the Special Master or the law firm of Ferrucci Russo, P.C. have an interest materially adverse to the Westerly Hospital and Related Entities or any class of creditors, by reason of any direct or indirect relationship.
 (5) Whether the Special Master or the law firm of Ferrucci Russo, P.C. after conducting due diligence would have a material conflict of interest by acting in a fiduciary role in this matter. *Page 6 
 IV. Professionals and Counsel to the Special Master
This Court is cognizant that in a complex matter, such as this, it may be necessary for the Special Master to retain attorney(s), business people, and other professionals (hereinafter referred to as "Professionals"), pending the Court's approval, to assist the Special Master in the performance of his duties.
Prior to the retention of any Professionals, the Special Master shall give notice to the Standing Regulatory and Public Protection Committee and the Standing Stakeholder Committee, as established below, and obtain the input of the Committee members prior to making application to this Court for authorization to retain the aforementioned Professionals.
 V. Establishment of a Standing Regulatory and Public Protection Committee
This Court finds that this Special Mastership raises significant public health, regulatory and public protection issues. It is critical that the regulatory and public protection agencies have access to timely information about the Westerly Hospital and Related Entities. It is also important that the Special Master and this Court have input from the regulatory, public health and public protection agencies to consider when making decisions that are in best interest of Westerly Hospital and Related Entities. Therefore, this Court establishes a Standing Regulatory and Public Protection Committee.
This Committee is voluntary and may include, but is not limited to: (1) the Rhode Island Secretary of Health and Human Services or his representative; (2) the Director of the Rhode *Page 7 
Island Department of Health or his representative; (3) the Rhode Island Attorney General or his representative, (4) the Rhode Island Health Insurance Commissioner or his representative and; (5) the Lieutenant Governor of the State of Rhode Island, in her capacity as Chairperson the Healthcare Reform Commission or her representative. The Special Master shall work diligently with this Committee when taking actions during the course of the Special Mastership that deal with public health, regulatory and public protection matters.
This Committee is in no way intended to affect the rights and duties of each member of the Committee. Participation on this Committee is advisory only and is specifically intended not to have any effect on any independent statutory licensing, regulatory or public protection authority these agencies or officials have under federal or state law.
 VI. Establishment of Standing Stakeholders Committee
This Court finds that it is critical that stakeholders receive information and have the ability to discuss with the Special Master matters related to the Westerly Hospital and Related Entities in a timely manner. The Court therefore establishes a Standing Stakeholders Committee. The Special Master shall serve as Chairperson of the Committee.
The Committee shall include, but not be limited to, the following stakeholder groups:
 (1) a representative of the Westerly Hospital and Related Entities Board of Trustees;
 (2) a representative of the management team at the Westerly Hospital and Related Entities;
 (3) a representative of the bondholders; *Page 8 
 (4) a representative of the secured financial institution;
 (5) a representative of the medical staff;
 (6) a representative of the unionized employees;
 (7) the Patient Care Ombudsman;
 (8) a representative of the unsecured creditors.
The Special Master shall recommend to the Court the individuals who will comprise the Committee and may recommend additional members of the Committee as the Special Master continues its diligence. However, as with all members of the Standing Stakeholders Committee, they must be approved by the Court. The Special Master may also establish sub-committees as circumstances dictate.
Participation in the Standing Stakeholders Committee is voluntary and each member is responsible for its own expenses and fees unless specifically provided for in this Order. The Committee members shall discuss and recommend to the Special Master whether counsel or other Professionals should be appointed to represent the Committee.[1] *Page 9 
 VII. Appointment of a Patient Care Ombudsman[2]
As the Special Master during this proceeding will be operating the Westerly Hospital and Related Entities, the Court directs the Special Master, in consultation with the Standing Regulatory and Public Protection Committee and the Standing Stakeholders Committee, recommend to this Court an individual to be appointed as the Patient Care Ombudsman while this proceeding is pending. The role of the Patient Care Ombudsman is to monitor the quality of patient care and to represent the interests of the patients of the Westerly Hospital and Related Entities. The Ombudsman shall also serve as a member of the Standing Stakeholders Committee and shall assist the Standing Regulatory and Public Protection Committee, as requested. The Patient Care Ombudsman shall be compensated, in an amount approved by this Court, as an administrative expense.
 VIII. Appointment of a Privacy Ombudsman[3]
The Special Master will be operating the Westerly Hospital and Related Entities while this proceeding is pending. Westerly Hospital and Related Entities are in possession of a large amount of private and confidential health care information. There are a multitude of federal and *Page 10 
state laws governing the privacy and protection of patient medical information. As the Special Master embarks on the process of determining the future of the Westerly Hospital and Related Entities, it is imperative that patient privacy and confidentiality be maintained. Therefore, this Court shall permit the Special Master, if he determines, in consultation with the Standing Regulatory and Public Protection Committee and the Standing Stakeholders Committee to recommend to this Court an individual to be appointed as the Privacy Ombudsman at any point while this proceeding is pending. The Privacy Ombudsman shall serve on the Standing Stakeholders Committee and the Standing Regulatory and Public Protection Committee on an as needed basis and shall report directly to the Special Master. The Privacy Ombudsman, should one be appointed, shall be compensated, in an amount approved by this Court, as an administrative expense.
 IX. Reports of the Special Master
The Special Master shall file with the Court a report on the status of the Special Mastership within seven (7) days of this Order. This report should include the actions taken by the Special Master and expected future actions of the Special Master during the next two weeks, when a new report shall be filed.
The report should include the most recent financial statements of the Westerly Hospital and Related Entities; a listing of the twenty largest secured and unsecured creditors with an estimate of the amount that will be claimed, a listing of material contracts, agreements and obligations, and a listing of material litigation. Such other information that the Special Master *Page 11 
deems appropriate that may assist the Court. The Special Master may file portions of this report that contain confidential or non-public information with a request that it be accepted and sealed by the Court.
 X. Form of Order Appointing the Special Master
The Special Master shall prepare and submit a proposed form of Order by the close of business on Monday, December 12, 2011. The Order should include, inter alia, the proposed powers, duties, responsibilities, notice, claims periods, stay of proceedings and the bond to be posted by the Special Master. The Special Master shall circulate the proposed Order and obtain the input of interested parties that have entered their appearance in this matter. Interested parties may also submit comments or recommended forms of Order to the Court on or before the close of business on Monday, December 12, 2011.
[1] This Court is fully aware that this is a departure from a standard creditor's committee. This has been done intentionally to establish a Committee that is comprised of representatives that have significantly divergent interests to share information.
[2] The concept of a Patient Care Ombudsman is taken from the Federal Bankruptcy Code. Section 333(a)(1) of the Bankruptcy Code requires that "[i]f the debtor in a case under chapter 7, 9 or 11 is a health care business, the court shall order . . . the appointment of an ombudsman to monitor the quality of patient care and to represent the interests of the patients of a health care business. . . ." 11 U.S.C. § 333(a)(1). Congress enacted the health care provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 with the goal of providing patients with protections and a voice in health care bankruptcy cases. "[T]he appointment of an ombudsman [is] to monitor the quality of patient care and to represent the interests of the patients of the health-care business. . . ." Am.Jur.Bankruptcy § 696.
[3] The concept of a Privacy Ombudsman is taken from the Federal Bankruptcy Code. Congress enacted the health care provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 with the goal of safeguarding private and confidential information.

 *Page 1